IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIM DEMPSEY, | ) | CASE NO. 8:07CV311 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| CITY OF OMAHA, a municipal corporation; MICHAEL G. FAHEY, Individually and in his Official Capacity; PAUL LANDOW, Individually and in his Official Capacity; and TOM MARFISI, Individually and in his Official Capacity, | ) ) ) ) ) ) ) ) ) ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 72), Motion in Limine (Filing No. 61), and Motion to Continue Trial (Filing No. 85). The Court finds that Defendants' Motion for Summary Judgment should be granted. The Motion in Limine and Motion to Continue Trial are therefore denied as moot.

## UNDISPUTED FACTS

The City of Omaha is a metropolitan city located in Douglas County, Nebraska. (Filing No. 74-7, Affidavit of Buster Brown, ¶ 3.) At all times relevant to this matter, Michael G. Fahey was the Mayor of the City of Omaha, Paul Landow was Mayor Fahey's Chief of Staff, and Thomas Marfisi was Omaha's Human Resources Director. (Filing No. 22, Amended Complaint ("Amended Compl."), ¶ 4.) On March 24, 2005, the City of Omaha, under statutory powers granted it by the State of Nebraska, passed an ordinance to annex the City of Elkhorn. (*Id.*, ¶ 5; *see also* Neb. Rev. Stat. § 14-117 (2007).) The City of Elkhorn challenged the annexation in Nebraska state court, but both the trial court and the Nebraska Supreme Court upheld the annexation. *See City of Elkhorn v. City of Omaha,*

725 N.W.2d 792, 810 (Neb. 2007). The annexation took effect on March 1, 2007. (Filing No. 74-2, Deposition of Tim Dempsey ( "Dempsey Dep."), 27:21-23.)

Plaintiff, Tim Dempsey, was employed as the Chief of Police for the City of Elkhorn, Nebraska, from September 27, 1999, until March 1, 2007. (Filing No. 73, p. 3, ¶ 5; Amended Compl., ¶ 8.) As Chief of Police, Dempsey was responsible for the general oversight and management of the Elkhorn Police Department. (Dempsey Dep., 4:18-20.) Dempsey was considered to be part of the City of Elkhorn's management team. (*Id.*, 11: 17-20.)

In April 2006, Dempsey told Landow that, despite the possibility of annexation, he would like to work another two or three years until his wife could retire. (Dempsey Dep., 7:24-9:11.) On October 13, 2006, Marfisi sent a letter to City of Elkhorn employees, including Dempsey, addressed to Elkhorn's "civilian non-management employees" and "management employees" stating that Omaha was "interested in hiring qualified management employees that express an interest in applying for available positions." (Filing No. 74-2, p. 59.) The letter also stated that "[a]ny decision to hire management employees will be made on a case by case basis and will be based on the needs of Omaha at the time of application." (*Id.*) In response to the letter, Dempsey called Marfisi and sent him his resume. (Dempsey Dep., 13: 17-22.) Dempsey also notified Marfisi that his current salary was $75,000 per year, together with benefits including a "take home" car. (Filing No. 74-2, p. 60.) In January 2007, Dempsey reiterated to Landow that he intended to work two to three more years to maintain insurance until his wife retired. (Dempsey Dep., 18:18 - 19:1; Filing No. 74-3, Deposition of Paul Landow ("Landow Dep."), 5:7-11.) Landow never promised Dempsey a specific job with the City of Omaha, and Dempsey never applied for a specific employment position. (Dempsey Dep., 36:11-16, 37:25-38:3.)

Landow told Dempsey that he would try to find a position for Dempsey and, according to Dempsey, Landow told him that Omaha would not have a problem finding a job for him. (*Id*., 19:11-16; Landow Dep., 5:7-14.)  Despite this promise, no one at Omaha contacted Dempsey and, in January 2007, Dempsey asked Marfisi about his employment status with the City of Omaha, listing several Elkhorn employees that Omaha had contacted about employment and questioning why he had not been contacted.  (Filing No. 74-2, p. 64.)

Leading up to the annexation, Omaha hired six of the thirteen Elkhorn police officers, declining to hire the other seven officers because their qualifications were not consistent with the standards and criteria generally applied by the Omaha Police Department ("OPD") in evaluating potential new hires. (Filing No. 75-2.) During the last week of February, Dempsey made several statements to the *Omaha World-Herald* regarding the seven Elkhorn police officers that were not hired. (Filing No. 74-2, pp. 65-70.) The articles quote Dempsey directly and indirectly as expressing dismay, criticism, and confusion over how OPD and the City of Omaha handled the situation. (*See generally id*.) During the same week, Marfisi asked Dempsey to deliver a letter from the City of Omaha to Elkhorn police officers demanding non-hired officers turn in their equipment before the effective date of the annexation. (Dempsey Dep., 40:14-19.) Dempsey refused to carry out Marfisi's request and Landow delivered the letter through other means. (*Id*., 40:7-19.)

On March 1, 2007, Dempsey met with Don Thorson, Mayor Fahey's deputy chief of staff, to discuss possible employment with the City of Omaha. (Dempsey Dep., 27:17-20, 28:16-17; Filing No. 74-6, Deposition of Don Thorson, 4:13-17.) Thorson indicated to Dempsey that part of Thorson's job included Homeland Security, and they discussed the possibility of a position, but nothing more specific than something in "emergency

3

management." (*Id*., 29:12-17.)  Thorson told Dempsey he would do what he could to find him a job and that he would be in touch with him.  (*Id*., 34:6-17.)  As of March 8, 2007, no final decision had been made regarding whether Dempsey would be offered a position with Omaha.  (Landow Dep., 22:10-14; Filing No. 82, p. 6, ¶ 17.)  However, on March 12, 2007, Dempsey received a letter from Landow indicating that Landow had been unable to find a position with Omaha that fit Dempsey's needs and qualifications.  (Filing 74-3, p. 29.)

Dempsey alleges two causes of action.  First, Dempsey alleges that Defendants deprived him of a property interest in his employment position without due process of law.  Second, Dempsey alleges that Defendants retaliated against Dempsey for exercising his First Amendment right to free speech after his statements to Marfisi and the *Omaha World-Herald*.  Dempsey bases his First Amendment claim on the *Omaha World-Herald* articles, including the headlines that were part of the publication, and his entire conversation with Marfisi refusing to carry out Marfisi's request for the non-hired Elkhorn police officers to turn in their equipment before the annexation.  (Filing No. 82, p. 6, ¶ 19.)  Defendants have moved the Court for summary judgment on each of Dempsey's claims.

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving

4

party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [the party's] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

## DISCUSSION

**I.   Due Process Claim**

Defendants argue that Dempsey's due process claim is barred by the Eighth Circuit's holding in *Barnes v. City of Omaha*, 574 F.3d 1003, 1008 (8th Cir. 2008) (holding that the seven Elkhorn police officers not hired by the City of Omaha did not have a legitimate claim of entitlement to employment with Omaha). Dempsey does not dispute that the ruling in *Barnes* precludes his due process claim and concedes that it merits

dismissal of Count I of the Amended Complaint. (Filing No. 82, pp. 1-2.) The Court therefore grants Defendants' Motion for Summary Judgment with respect to Dempsey's due process claims.

## II.   First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, Dempsey must allege and prove he "engaged in conduct protected by the First Amendment and the protected conduct was a substantial or motivating factor in the employer's decision to take the adverse employment action." *Hughes v. Stottlemyre*, 506 F.3d 675, 678 (8th Cir. 2007). "Whether the protected conduct was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). Thus, the Court must first determine whether Dempsey alleged and proved "(1) [h]e engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against [him]; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." *Davison v. City of Minneapolis*, 490 F.3d 648, 655-56 (8th Cir. 2007). The Court finds that Dempsey failed to meet this burden of presenting a *prima facie* case of First Amendment retaliation.

### A.   Protected Activity

Whether speech is protected is a question of law and not fact. *McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855, 866 (8th Cir. 2009). The threshold determination of whether speech is constitutionally protected depends on whether an employee spoke as a citizen on a matter of public concern. *Davison*, 490 F.3d at 655. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court stated, "[s]o long as

employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419. "After *Garcetti*, a public employee does not speak as a citizen if he speaks pursuant to his job duties." *McGee v. Pub. Water Supply, Dist. # 2*, 471 F.3d 918, 919 (8th Cir. 2006). Thus, "[t]he problem in any case, is to arrive at a balance between the interest of the [employee], as a citizen, in commenting upon matters fo public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

### I.    *Speaking as a Citizen*

Dempsey's speech that is at issue here was not made in connection with any official duties as an employee of the City of Omaha. While he may have spoken in his official capacity as the Police Chief of the City of Elkhorn, he was not employed by the City of Omaha at the time he made the statements in question. The balance between a plaintiff's right of free speech as a citizen and a defendant government entity's interest are not called into question where the government entity is not the employer. Drawing all inferences in favor of Dempsey, the Court concludes that he spoke as a citizen.

### 2.    *On a Matter of Public Concern*

Whether speech addresses a matter of public concern depends on its form, content, and context. *Kozisek v. County of Seward, Neb.*, 539 F.3d 930, 936 (8th Cir. 2008). Further, the speech "must relate to some matter of political, social or other community concern." *Id.* Where a plaintiff speaks not as a concerned public citizen, but merely as an employee concerned with internal policies and practices, the speech is not protected as a matter of public concern. *Wingate v. Gage County School Dist., No. 34,* 528 F.3d 1074,

1081 (8th Cir. 2008). Where speech relates to both private and public matters of concern, it is only protected if the speech is primarily motivated by public concern. *McCullough*, 559 F.3d at 866. Motivation is also gauged by the speech's form, content, and context. *Id.*

### a. *Statements Made to Marfisi*

Dempsey alleges two general instances in which he spoke as a citizen on matters of public concern. The first was an exchange with Marfisi regarding Omaha's request that the police officers not hired by Omaha immediately return their issued equipment to the City of Elkhorn. On February 27, 2009, Dempsey sent an email to all Elkhorn police officers notifying them that when the annexation took place, their equipment would be property of the City of Omaha. (Filing No. 81-2, Affidavit of Tim Dempsey ("Dempsey Aff."), ¶¶ 17-18.) Dempsey also advised the seven officers not hired by Omaha they would need to turn in their equipment. (*Id.*, ¶ 17) The seven officers responded to Dempsey's e-mail with a letter refusing to turn over their equipment until ordered to do so by a superior officer, and they demanded notices of termination. (*Id.*, ¶ 18.) Dempsey hand-delivered the seven officers' letters to Elkhorn's liaison with Omaha, and the letters were given to Marfisi. (*Id.*, ¶ 19.) Marfisi called Dempsey the next day telling him that he would be provided a letter to deliver to the officers forcing them to turn in their property. (*Id.*, ¶ 20.) Dempsey refused to deliver the letters for two reasons. First, the officers were Elkhorn police officers until the annexation actually took place. Second, Dempsey perceived that Marfisi's request was both "wrong" and contrary to what the officers asserted in their letters. (*Id.*) Dempsey also knew from experience that taking their equipment would be tantamount to discharging them. (*Id.*, ¶ 21.)

The context, form, and content of this exchange shows that this speech addressed purely private concerns. Dempsey's exchange with Marfisi took place in private. Dempsey

did not refuse to deliver the letters out of concern for the public, but because of his concern for the officers. Dempsey had already informed the officers they would need to turn in the equipment eventually, and he simply refused to demand the equipment while they were still Elkhorn police officers. There is no allegation that Dempsey's concerns were related to public safety, or other public interest. Dempsey's statements were simply related to internal police procedures and practices. Thus, Dempsey's speech to Marfisi did not address matters of public concern and was not protected under the First Amendment.

### b. *Statements Made to the Omaha World-Herald*

Dempsey also alleges that his statements to the *Omaha World-Herald* constituted protected speech. Dempsey's statements to the *Omaha World-Herald* were critical of Omaha's decision-making process in refusing to hire seven of the Elkhorn police officers. Looking at the articles as a whole, the content of the speech did not appear to address matters of public concern. The articles merely criticized Omaha's internal practices and procedures and did not refer to any impact such decisions could have on the public. Again, drawing all inferences in Dempsey's favor, however, the context and form of Dempsey's comments could suggest that the statements were intended to address matters of public concern. Defendants submitted as evidence four newspaper articles concerning Omaha's failure to hire six police officers. While statements are not necessarily matters of "public concern" simply because they are printed in a newspaper, the repetitive nature of the articles could indicate that the public was concerned about how Omaha handled the situation. *See Connick v. Myers*, 461 U.S. 138, 148 (1983). Thus, while Dempsey's statements concerned internal affairs, the Court will proceed with its analysis on the assumption that the statements did address matters of public concern.

9

B.     Adverse Employment Action

In addition to protected speech, Dempsey must show that he suffered adverse employment action. The First Amendment prevents government officials from making employment decisions, such as hiring or firing, based on an employee's protected activity. *Lucas v. Monroe County*, 203 F.3d 964, 975 (6th Cir. 2000). Dempsey contends he was employed by the City of Omaha on March 1, 2007, because Thorson never told Dempsey he was not a city employee. (Filing No. 82, p. 3.) According to Dempsey, his employment with the City of Omaha continued until March 12, 2007, when he received a letter from Landow stating:

> Per the conversations you had with Tom Marfisi and me, I have been looking for a position in city government that fits your needs and qualifications. Unfortunately, to date I have not yet been successful. Should something come up in the future, I will be in touch.

(Filing No. 74-3, p. 29.) The Court will not infer an adverse employment action based upon this letter, because it indicates no change in Dempsey's status. A plaintiff suffers no adverse employment action where the record fails to show that the plaintiff's position changed in any way due to the alleged adverse employment action. *Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007).

Dempsey claims he was employed by Omaha because he was not formally discharged by Thorson or anyone else. Thorson made it clear to Dempsey that he would not continue in his position as Elkhorn Chief of Police following the annexation, but promised to do his best to find Dempsey a position in Omaha city government. Dempsey had similar conversations with Landow and other Omaha officials. After March 1, 2007, Dempsey did not receive a pay check from the City of Omaha except to cash out his accrued vacation time as an Elkhorn employee. According to Dempsey, however, he was

an Omaha employee,[1] though he received no pay and had no official position. Dempsey simply did not suffer any adverse employment action.

### C. Causal Connection; Protected Speech a Motivating Factor

Even if Dempsey had suffered an adverse employment action, he cannot show that his allegedly protected speech was a motivating factor in Omaha's decision. The plaintiff bears the burden of showing a causal connection between protected speech and adverse employment action. *Altonen v. City of Minneapolis*, 487 F.3d 554, 561 (8th Cir. 2007). To meet this burden, Dempsey must show that his comments in the *Omaha World-Herald* caused an adverse employment action, in other words that Defendants had a retaliatory motive that played a part in their employment decision.[2] *Id.* at 560. Evidence giving rise to an "inference of retaliatory motive" sufficiently proves the causal link. *Id.* If Dempsey were to make this showing, the burden would shift to Defendants to show that they would have taken the same action regardless of Dempsey's protected speech. *Id.* at 561.

Dempsey argues that his claim should survive summary judgment because factual issues remain as to whether: Defendants continued to look for a job for Dempsey; Dempsey knew he would not be hired by the Omaha Police Department; and Dempsey failed to apply for a specific job. The resolution of any such factual disputes, however, would not give rise to a causal link between Dempsey's protected statements and any

---

[1] Dempsey also hints that his First Amendment retaliation claim should survive because Omaha failed to hire him. The Court does not address this argument because it appears to be a discriminatory failure-to-hire claim, that Dempsey has not raised. Moreover, even assuming Dempsey had brought such a claim, he has not established a *prima facie* case on the other elements.

[2] The Court does not consider the causal connection between Dempsey's statements to Marfisi and any alleged adverse employment action. Those statements clearly only spoke to private concerns and no inquiry need be made as to whether they caused Dempsey's alleged termination.

alleged adverse employment action. Defendants' efforts to find a job for Dempsey, before he made the allegedly protected speech, included informal meetings with Dempsey, minimal contact regarding Dempsey's future employment, and what resulted in empty promises. Dempsey even sent an e-mail to Marfisi in January 2007 asking why he had not been contacted about a position, while other Elkhorn employees had already received offers. After Dempsey's allegedly protected speech occurred, Thorson met briefly and informally with Dempsey, stating that he wanted to find Dempsey a position and hinting at a possible job with Homeland Security. Landow also sent an e-mail to other City officials proposing that they discuss Dempsey's situation. Finally, Landow sent the letter telling Dempsey they had not been successful. Nothing indicates Defendants were less diligent following Dempsey's allegedly protected speech than they were before the speech occurred. Accordingly, Dempsey has failed to establish the existence of any genuine issue of material fact regarding causation – the link between the allegedly protected speech and the alleged adverse action. Because Dempsey cannot establish that his allegedly protected speech was a motivating factor in any alleged adverse employment action, he fails to satisfy the third element in a *prima facie* case of retaliation.

## CONCLUSION

Dempsey conceded his Due Process claim. Regarding his First Amendment claim, Dempsey failed to meet his burden of establishing each of the elements of a *prima facie* case of retaliation.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 72) submitted by Defendants City of Omaha, Michael G. Fahey, Paul Landow and Tom Marfisi, is granted;

2. Plaintiff Tim Dempsey's Amended Complaint (Filing No. 22) is dismissed with prejudice;

3. Defendants' Motion in Limine (Filing No. 61) is denied as moot;

4. Defendants' Motion to Continue Trial (Filing No. 85) is denied as moot; and

5. The Court will enter a separate judgment.

DATED this 6th day of November, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge